Sigfrido **TORRES–LAZARINI,**
Plaintiff, Appellant,

v.

**UNITED STATES of America,**
Defendant, Appellee.

No. 06–2634.

United States Court of Appeals,
First Circuit.

Submitted March 6, 2008.

Decided April 16, 2008.

Rafael A. Oliveras Lopez De Victoria on brief for appellant.

Julia M. Meconiates and Nelson Pérez–Sosa, Assistant United States Attorneys, on brief for appellee.

Before BOUDIN, Chief Judge, LYNCH, Circuit Judge, and KEENAN, District Judge.*

KEENAN, District Judge.

Plaintiff-appellant Sigfrido Torres–Lazarini appeals from the district court's entry of judgment in favor of defendant-appellee the United States (the "government"). Plaintiff brought suit under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, et seq., alleging that the medical staff of the Veterans Administration Hospital in San Juan, Puerto Rico (the "VA hospital") failed properly to diagnose an injury to his right shoulder. After a bench trial, the district court issued a memorandum order finding that plaintiff had not proven medical malpractice and dismissed the action. We affirm.

## Background

The testimony presented at trial established the following. Torres–Lazarini is a retired Marine and veteran of the Korean War who has been receiving treatment at the VA hospital since 1953. On September 9, 2002, when he was seventy-one years old, he collapsed at his home due to dizziness and injured his right shoulder in the fall. He went to the VA hospital's emergency room and was referred for treatment to Sylvia Rodríguez, M.D., his primary physician, complaining of pain and limited range of motion. Dr. Rodríguez examined his shoulder and ordered x-rays of the area. The x-rays revealed no damage from the fall but did reveal a mild degenerative bone condition, a precursor to osteoporosis. Torres–Lazarini was of-

---

* Of the Southern District of New York, sitting by designation.

fered anti-inflammatory medication but refused it. Dr. Rodríguez suggested that he apply ice to the shoulder and told him to return to see her in two weeks if there was no improvement.

Torres–Lazarini did not return to the VA hospital with complaints of shoulder pain until mid-November 2002. Dr. Rodríguez examined the shoulder and concluded that its condition had worsened. She offered to refer Torres–Lazarini to a physiatrist, a specialist who could determine if an MRI study was indicated, and gave him an "emphatic" recommendation to undergo physical therapy. He turned down these suggestions and agreed only to undergo a bone densitometry test and to begin a home exercise program. He returned to the VA hospital again in December 2002, complaining of shoulder pain and a delay in obtaining an appointment for the bone densitometry test. He refused Dr. Rodríguez's offer to evaluate his shoulder. Dr. Rodríguez told him that he had an open appointment to come see her in the event he changed his mind and wanted further medical evaluation.

In May 2004, Torres–Lazarini brought a mandamus action in district court against the government, alleging that he had received no follow-up treatment and that, despite having sent numerous letters to the Veterans Administration requesting treatment, he received no response. In August 2004, he had another appointment with Dr. Rodríguez. He requested to have another doctor assigned as his primary physician and refused further evaluation of his shoulder. Dr. Rodríguez recommended that he undergo an MRI, receive physical therapy, and schedule follow-up appointments. Torres–Lazarini underwent an MRI for his shoulder a few weeks later. The MRI revealed osteoarthritis and tearing of several tendons in the shoulder. The VA hospital offered him the option of surgery to implant a prosthetic replacement of the humeral head of his right shoulder. Torres–Lazarini was told that, although the surgery would not necessarily help restore range of motion, it would ease his pain. He declined the surgery.

In October 2004, Torres–Lazarini moved to dismiss his mandamus action without prejudice, stating that he was receiving therapy. The court entered judgment dismissing the action.

Torres–Lazarini filed the present action against the government on February 3, 2005. At the bench trial, he presented the testimony of an expert witness, Dr. Humberto Díaz–Negrón, a disability specialist and orthopedic surgeon. Dr. Díaz–Negrón had examined Torres–Lazarini's medical records but had never performed a physical examination of him. The expert testified that, in his opinion, the VA hospital breached its duty of care by failing to conduct an orthopedic evaluation shortly after the September 9, 2002 fall and by waiting two years before conducting an MRI. He also testified that surgery soon after the accident would have restored range of motion and alleviated pain.

The government presented the testimony of its expert, Dr. Carlos Grovas Badrena, an orthopedic surgeon. Dr. Grovas physically examined Torres–Lazarini and also examined his medical records. He testified that the medical records indicated that, between September 9, 2002 and May 4, 2004, Torres–Lazarini visited the VA hospital on nine occasions without complaining of shoulder problems. Dr. Grovas also testified that, as a result of his physical examination of Torres–Lazarini, he believed severe osteoarthritis was causing the shoulder pain. Further, Dr. Grovas stated that Dr. Rodríguez's recommendation of physical therapy was the proper treatment for loss of motion due to a dislocated shoulder. In addition, Dr. Grovas

testified that, in his opinion, there was no breach of care by the VA hospital because it was not standard practice to refer a patient with negative x-rays to an orthopedist. Rather, Dr. Rodríguez followed standard procedure by immediately ordering x-rays, recommending a course of anti-inflammatory medication and a follow-up appointment. Finally, Dr. Grovas stated that Dr. Rodríguez's recommendations to Torres–Lazarini that he receive evaluation from a physiatrist—who would then be in a position to decide whether an MRI was indicated—and that he undergo physical therapy, were proper.

Torres–Lazarini testified, in contradiction of his medical records, that he did not refuse treatment on several occasions. He also testified about the unanswered letters he sent to the Veteran's Administration requesting treatment.

At the conclusion of the bench trial, the district court found no medical malpractice and entered judgment for the government. On appeal, Torres–Lazarini raises several challenges to the district court's findings. He claims that the court erred in finding that he refused treatment because he asserts that the VA hospital ignored his repeated letters requesting treatment; that the court improperly considered his prior lawsuits against the Veterans Administration and arrests at the hospital; that the court erred in finding that his testimony was not credible; and that the court's findings of fact are deficient because they failed to address, or even mention, the testimony of his expert, Dr. Díaz–Negrón. These claims can be collapsed into one issue: whether the district court clearly erred in finding that Dr. Rodríguez's treatment of plaintiff's shoulder did not deviate from the standard practice of care.

## Discussion

■■ A district court's findings after a bench trial "must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed.R.Civ.P. 52(a). A finding is only clearly erroneous if review of the entire record leads to a definite and firm conviction that an error has been made. See Primus v. United States, 389 F.3d 231, 237 (1st Cir.2004). When the evidence presented at a bench trial supports plausible but competing inferences, the court's decision to favor one inference is not clearly erroneous. See Cape Fear, Inc. v. Martin, 312 F.3d 496, 500 (1st Cir.2002).

■■ The law of Puerto Rico, where the alleged malpractice occurred, provides the standard of liability in this FTCA action. See 28 U.S.C. §§ 1346(b)(1) and 2674. To prove medical malpractice under Puerto Rico law, a plaintiff must establish "(1) the duty owed (i.e., the minimum standard of professional knowledge and skill required in the relevant circumstances), (2) an act or omission transgressing that duty, and (3) a sufficient causal nexus between the breach and the claimed harm." Cortes–Irizarry v. Corporacion Insular De Seguros, 111 F.3d 184, 189 (1st Cir.1997).

■■ The district court's finding of no medical malpractice was fully supported by the evidence. In its memorandum order, the court accepted Dr. Grovas' conclusion that, on the basis of his examination of plaintiff and his review of the full medical file, the care that plaintiff received for his shoulder "was in full compliance with the standards of the medical profession for the type of soft tissue injury suffered by this elderly veteran." The court credited Dr. Grovas' opinion that Dr. Rodríguez's decision not to order MRI tests after x-rays came back negative was not a deviation from standard medical practice. The court also found, on the basis of the medical records, that "plaintiff refused the con-

servative treatment offered to him, he missed appointments, rejected physical therapy, and refused to cooperate with the staff at the VA hospital in assessing and treating his shoulder injury as Dr. Rodríguez originally intended." "Having had the benefit of assessing issues of credibility, and having perceived the obsession that this plaintiff has against the VA hospital and its medical staff," the district court concluded that plaintiff had failed to prove that the VA hospital and its staff committed malpractice. The court further found that the shoulder complications were caused by other factors, such as age, multiple other falls, and degenerative joint illness.

The district court's findings are supported by the expert testimony and medical records presented at trial. Moreover, a review of the entire record does not remotely suggest that the court made any error.

■ Torres–Lazarini protests that the court erred in discrediting his testimony that he never refused treatment. "[I]t is hornbook law that matters of credibility are ordinarily for the court of first instance, not for the appellate court." *Feliciano v. Rullan,* 378 F.3d 42, 53 (1st Cir. 2004). In support of his position, Torres–Lazarini points to the letters that he wrote to the Veterans Administration in which he sought treatment, the fact that the letters went unanswered, and the fact that he finally resorted to filing the mandamus action in order to obtain treatment. This evidence, however, does not contradict the court's finding that he missed certain appointments and, more importantly, refused to follow the specific treatment recommended repeatedly by Dr. Rodríguez for his shoulder, including her emphatic suggestion that he undergo physical therapy. Torres–Lazarini has not shown how the court's decision to credit medical records

establishing that he refused recommended remedies on several occasions over his own testimony was clear error.

Torres–Lazarini also claims that the district court "gave a prejudicial and incorrect evaluation of [his] character" because the court was under the impression that his previous lawsuits against the Veterans Administration were frivolous. In fact, Torres–Lazarini asserts, his previous lawsuits were meritorious and brought him favorable results. These prior lawsuits are, of course, irrelevant to whether Dr. Rodriguez's treatment of him on September 9, 2002 and thereafter met the appropriate standard of care. Whether the district court understood the merits of these prior lawsuits is neither here nor there.

■ To the extent that Torres–Lazarini suggests that the court impermissibly considered these prior lawsuits in assessing his credibility, this claim is not supported by the court's findings of fact. Although the court noted his history of lawsuits and arrests at the VA hospital in the introductory paragraphs of its memorandum order, the court's analysis of his malpractice claim was based on Dr. Grovas' expert testimony, the medical records and the court's assessment of credibility issues after having perceived Torres–Lazarini's obsession with the VA hospital. There is no indication that the court relied on his history of prior lawsuits or arrests in deciding any of the issues in the case, and the court is presumed to ignore inadmissible evidence during bench trials. *See Harris v. Rivera,* 454 U.S. 339, 346, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981).

Finally, Torres–Lazarini complains that the district court's memorandum opinion neglected to mention the testimony of his expert witness, Dr. Díaz–Negrón, who opined that Dr. Rodríguez's failure to order an MRI constituted a breach of care. Torres–Lazarini cites a Seventh Circuit

case, *Kidd v. Ill. State Police,* 167 F.3d 1084 (7th Cir.1999), for the proposition that a court's failure to mention and address strongly conflicting evidence in its findings of fact amounts to clear error.

We have explained Rule 52(a)'s requirements for a district court's findings of fact after a bench trial:

> [T]he purpose of the rule is to apprise the appellate court of the grounds on which the trial court based its decision. Therefore, findings are sufficient so long as they indicate the factual basis for the ultimate conclusion. The judge need only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts. As long as such brief and pertinent findings are made and the record as a whole supports the district court's findings of fact, we can affirm its result. Further, even where the district court's findings were poorly done because they consisted mainly of mere conclusions and did not articulate specific factual bases for the trial court's boilerplate decision, there was no Rule 52(a) defect because despite the factual shortcomings, the basis for the courts decision is clear and the record gives substantial and unequivocal support for the ultimate conclusion.

*Reich v. Newspapers of New England,* 44 F.3d 1060, 1079 (1st Cir.1995) (internal citations, alterations, and quotation marks omitted).

Applying these standards, the memorandum order's failure to mention the testimony of plaintiff's expert does not render the district court's findings of fact defective. The order addressed the pertinent background of the case and set forth the court's findings regarding Torres–Lazarini's medical history in significant detail. It then adopted Dr. Grovas' opinion that an MRI was not indicated when Torres–Lazarini visited Dr. Rodríguez, that Torres–Lazarini refused to cooperate with the staff of the VA hospital in assessing and treating his injury, and that the hospital's treatment of Torres–Lazarini met the proper standard of care. It is clear from the court's findings that it credited Dr. Grovas' opinion over the opinion of plaintiff's expert.

Furthermore, *Kidd v. Ill. State Police,* on which Torres–Lazarini relies, is inapposite. There, the district court credited a witness's testimony that two police cadets exhibited a marked difference in their writing skills. The court's findings of fact failed to mention documentary evidence, in the form of test scores and writing samples, revealing relative similarity in the cadets' writing skills. *Kidd,* 167 F.3d at 1097–1100. The Seventh Circuit remanded because it could not "be sure that the court considered [the contradictory] evidence or, if so, how it reconciled the conflict." *Id.* at 1101.

Here, by contrast, the record does not reveal any unexplained documentary evidence that calls into question the opinion testimony of Dr. Gavros. To the extent that plaintiff claims that the letters he sent to the Veterans Administration constitute contradictory evidence, as explained above, those letters do not impugn Dr. Gavros' findings, based on the medical records, that plaintiff missed appointments and ignored Dr. Rodríguez's recommendations. Further, the opinion of plaintiff's expert, while certainly at odds with that of Dr. Gavros, is merely that—an opinion. "It is well within the fact-finder's province to determine the weight accorded to expert witnesses." *United States v. Shelton,* 490 F.3d 74, 79 (1st Cir.2007). The court found Dr. Gravos' opinion convincing and arrived at a sound conclusion. There was no need to try and reconcile the differ-

ences in the two experts' opinions. Moreover, the district court's findings, although they do not mention the testimony of plaintiff's expert, are sufficiently comprehensive to indicate that the court paid careful attention to all of the evidence that was presented.

In sum, because the district court's findings were supported by the expert testimony and medical records presented at trial, they were not clearly erroneous.

*Affirmed.*