# United States Court of Appeals
## For the First Circuit

No. 19-1709

WANDA E. DAUMONT-COLÓN,

Plaintiff, Appellant,

v.

COOPERATIVA DE AHORRO Y CRÉDITO DE CAGUAS and
IRMA HILERIO-ARROYO, as officer and in her personal capacity,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Camille L. Vélez-Rivé, U.S. Magistrate Judge]

Before

Barron and Selya, Circuit Judges,
and Katzmann, Judge.[*]

Godwin Aldarondo-Girald and Aldarondo Girald Law Office on
brief for appellant.
Enrique J. Mendoza Méndez and Mendoza Law Offices on brief
for appellees.

December 4, 2020

---

[*] Of the United States Court of International Trade, sitting
by designation.

**SELYA**, **Circuit Judge**.  Plaintiff-appellant Wanda E. Daumont-Colón (Daumont) asserts that she was fired from her position as a branch manager for defendant-appellee Cooperativa de Ahorro y Crédito de Caguas (the Credit Union) because of her age. The Credit Union demurs, asserting that Daumont was discharged because of a material breach of its rules of conduct.  A jury trial ensued and, at the close of Daumont's evidence, the district court granted the Credit Union's motion for judgment as a matter of law. See Fed. R. Civ. P. 50(a).  On appeal, Daumont challenges what she characterizes as the district court's misapplication of the law of the case doctrine, its exclusion of evidence as to the discipline meted out to other employees, and its determination that she failed to present facts sufficient to take her case to the jury. Concluding, as we do, that Daumont is foraging in an empty cupboard, we affirm.

## I. BACKGROUND

Many of the facts are uncontroverted and were stipulated by the parties.  We supplement that account with other uncontroversial facts, mindful that the nub of the parties' dispute is not on the raw facts, but on what those facts signify.

The Credit Union is located in Caguas, Puerto Rico, and offers financial services to its members.  In March of 2015, Daumont — then sixty years of age — was serving as the branch manager for one of the Credit Union's branches.  Irma Hilerio-

- 2 -

Arroyo (Hilerio) was the Credit Union's chief executive officer (with the title of "Executive President").[1]

The events leading up to Daumont's dismissal can be succinctly summarized. On February 20, 2015, Daumont was at work when she received a telephone call from her husband, José Tirado, who was a long-time member of the Credit Union. Tirado asked Daumont to withdraw eighty dollars from his line of credit at the Credit Union and deposit it into his checking account. Daumont proceeded to fill out a withdrawal slip and, on the line provided for the member's signature, signed Tirado's name. Daumont then gave the withdrawal slip to a teller, Norberto Santos, and instructed him to obtain the necessary authorization for the transaction.

At trial, Santos testified that he could not recall whether he tried to obtain authorization from his immediate supervisor, Joanny Torres. What is clear, though, is that the transaction was never properly authorized. And once Torres learned of the transaction, she brought it to the attention of Ramon Adorno, vice president of operations. At a later meeting with Adorno, Daumont admitted that she had signed Tirado's name to the withdrawal slip. She added that she had signed for Tirado on prior

---

[1] Daumont's suit named both the Credit Union and Hilerio as defendants. On appeal, Daumont does not press any particularized claims against Hilerio. For ease in exposition, then, we refer throughout to the Credit Union as if it were the sole defendant.

- 3 -

occasions and represented that she was on file with the Credit Union as an "authorized signature" for Tirado's line of credit.

On March 10, 2015, Daumont was discharged by the Credit Union. In a letter from Hilerio, she was told that her dismissal stemmed from signing Tirado's name to withdrawal slips, which violated (among other things) the Credit Union's rules against offering false information on official documents. Pertinently, Hilerio's letter noted that those rules called for an employee's firing after a single offense of this genre and that, in all events, the Credit Union's investigation had revealed that Daumont was not an authorized signatory on Tirado's line of credit.

Daumont did not go quietly. Instead, she brought suit in the federal district court pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1), which prohibits adverse employment actions against any individual when carried out "because of such individual's age." Her complaint also set forth a medley of supplemental claims under Puerto Rico law. The parties consented to proceed before a magistrate judge. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. After the close of discovery, the Credit Union moved for summary judgment. See Fed. R. Civ. P. 56. The district court jettisoned two of Daumont's claims (neither of which is implicated on appeal) but otherwise denied the motion. See Daumont-Colón v. Cooperativa de Ahorro y Crédito de Caguas, No. 15-3120, 2018 WL 10741870, at *4-6 (D.P.R. May 9, 2018).

- 4 -

The Credit Union subsequently moved in limine to exclude, among other things, Daumont's proffered evidence concerning the Credit Union's allegedly disparate treatment of younger employees who had engaged in misconduct. The district court denied this motion without prejudice. See Daumont-Colón v. Cooperativa de Ahorro y Crédito de Caguas (Daumont I), No. 15-3120, 2019 WL 8808083, at *1 n.1 (D.P.R. June 12, 2019).

During the trial, Daumont admitted that she had signed withdrawal slips in Tirado's name not only on February 20, 2015, but also on seven previous occasions. Tirado confirmed that he had verbally authorized the transactions, and Santos testified as to his role in effectuating the February 20 withdrawal. By agreement, the Credit Union's rules of conduct were introduced as an exhibit. But when Daumont attempted to adduce evidence concerning discipline meted out to other employees for different kinds of infractions, the Credit Union renewed its objection to the introduction of the challenged evidence. This time, the district court — first ruling ore sponte and then elaborating its reasoning in a written rescript filed in connection with Daumont's motion for reconsideration — excluded the comparator evidence, primarily because the other employees were not similarly situated to Daumont in material respects. See id. at *2.

Once Daumont rested, the Credit Union moved for judgment as a matter of law. See Fed. R. Civ. P. 50(a). The district court

- 5 -

granted the motion.  See Daumont-Colón v. Cooperativa de Ahorro y Crédito de Caguas (Daumont II), No. 15-1320, 2019 WL 8809765, at *1 (D.P.R. June 14, 2019).  The effect of this ruling was to dismiss with prejudice all of Daumont's remaining claims under both the ADEA and Puerto Rico law.  See id. at *5.  This timely appeal followed.

## II. ANALYSIS

Daumont's asseverational array begins with a claim that the district court contradicted the law of the case doctrine when — after denying the Credit Union's pretrial motions in limine and for summary judgment — it excluded her proffered comparator evidence at trial and eventually granted the Credit Union's Rule 50(a) motion.  Next, Daumont challenges those latter rulings on their merits.  We consider these claims of error sequentially.

### A.  Law of the Case.

Daumont insists that when the district court ruled in her favor on the Credit Union's motion in limine and its motion for summary judgment, those decisions became binding as the "law of the case."  Because none of the "exceptional circumstances" permitting a court to deviate from the law of the case doctrine was in play, United States v. Matthews, 643 F.3d 9, 14 (1st Cir. 2011), the district court (in her view) was not at liberty either to exclude her comparator evidence at trial or to grant the Credit Union's Rule 50(a) motion.  We do not agree.

- 6 -

The essence of the law of the case doctrine is the notion that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). In practice, though, the doctrine has two separate branches. See United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004). The first branch, known as the mandate rule, constrains trial courts in the aftermath of appellate rulings. See id. That branch is not implicated here.

"The second branch contemplates that a legal decision made at one stage of a criminal or civil proceeding should remain the law of that case throughout the litigation, unless and until the decision is modified or overruled by a higher court." Id. This aspect of the doctrine is "prudential" and, thus, "more flexible" than the mandate rule. Id. Especially because the Civil Rules authorize district courts to revise their own orders and decisions at any time before entering final judgment, see Fed. R. Civ. P. 54(b), such interlocutory rulings ordinarily "do not constitute the law of the case," Harlow v. Children's Hosp., 432 F.3d 50, 55 (1st Cir. 2005) (quoting Pérez-Ruiz v. Crespo-Guillén, 25 F.3d 40, 42 (1st Cir. 1994)). At least in the absence of extraordinary circumstances (and no such circumstances exist here), the law of the case doctrine is inherently discretionary insofar as it affects a trial court's power to revisit its prior

interlocutory orders.  See id. at 55-56.  Against this backdrop, we have said that a trial court's decision to revisit its earlier rulings is reviewable only for "particularly egregious" abuses of discretion.  Id. at 56.

Seen in this light, Daumont's argument is hopeless.  The record in this case reflects nothing more than a routine exercise of the district court's discretion.  Take, for example, the court's decision to grant judgment as a matter of law after previously denying the same party's motion for summary judgment.  As a general matter, it is unremarkable to grant a party's motion for judgment as a matter of law after having denied that party's motion for summary judgment.  See, e.g., Delgado v. Pawtucket Police Dep't, 668 F.3d 42, 44-45 (1st Cir. 2012); Wilson v. Moreau, 492 F.3d 50, 52 (1st Cir. 2007); cf. Flibotte v. Pa. Truck Lines, Inc., 131 F.3d 21, 25 (1st Cir. 1997) (characterizing as "perfectly appropriate" granting of judgment notwithstanding the verdict after court earlier had denied motion for directed verdict).  Although the district court's task is much the same at both stages, the evidence that it may properly consider is not:  motions for summary judgment are decided based on affidavits and other pretrial filings, whereas motions for judgment as a matter of law are "decided on the evidence that has been admitted" at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986) (quoting Bill Johnson's Rests., Inc. v. NLRB, 461 U.S. 731, 745 n.11

(1983)).  Those bodies of evidence may be similar, but in the typical case — as here — they are not identical.  See Thorpe v. Mut. of Omaha Ins. Co., 984 F.2d 541, 545 (1st Cir. 1993).

Much the same reasoning applies to the district court's revisiting of the Credit Union's objections to the comparator evidence.  The district court explained that it originally denied the Credit Union's motion in limine mainly because it considered exclusion "to be premature" at that juncture.  Daumont I, 2019 WL 8808083, at *1 n.1; cf. Fusco v. Gen. Motors Corp., 11 F.3d 259, 263 (1st Cir. 1993) (acknowledging that courts hesitate to exclude evidence before trial because "many issues are best resolved in context and only when finally necessary").  By not definitively excluding the evidence through a pretrial ruling, the district court gave Daumont an opportunity to put her best foot forward and establish, in the setting of the trial, why the proffered evidence satisfied applicable standards of relevance and probative value.  At the same time, the court gave itself "a chance to reconsider the ruling with the concrete evidence presented" at trial.  Fusco, 11 F.3d at 262.  Even if Daumont's proffer at trial remained substantially identical to her proffer at the motion-in-limine stage, the district court remained "free, in the exercise of sound judicial discretion, to alter [its] previous in limine ruling."  Luce v. United States, 469 U.S. 38, 41-42 (1984) (emphasis in original).  It follows that the law of the case doctrine did not

foreclose the district court's reappraisal of the admissibility of the proffered comparator evidence.

**B. <u>Exclusion of Comparator Evidence at Trial</u>.**

Daumont contends that even if the district court's denial of the Credit Union's motion in limine did not constitute the law of the case, the court nonetheless erred in refusing to admit her proffered comparator evidence at trial. This evidence, she says, would have shown disparate treatment and, thus, would have given the jury a basis for finding that the Credit Union's stated ground for her discharge was pretextual.

On appeal, "[w]e review rulings admitting or excluding evidence for abuse of discretion." <u>Downey</u> v. <u>Bob's Disc. Furniture Holdings, Inc.</u>, 633 F.3d 1, 8 (1st Cir. 2011). Under this deferential standard, "we may overturn a challenged evidentiary ruling only if it plainly appears that the court committed an error of law or a clear mistake of judgment." <u>Torres-Arroyo</u> v. <u>Rullán</u>, 436 F.3d 1, 7 (1st Cir. 2006).

To support an inference of discriminatory animus, evidence that an employer has engaged in disparate treatment "must rest on proof that the proposed analogue is similarly situated in material respects." <u>Vélez</u> v. <u>Thermo King de P.R., Inc.</u>, 585 F.3d 441, 451 (1st Cir. 2009) (quoting <u>Perkins</u> v. <u>Brigham & Women's Hosp.</u>, 78 F.3d 747, 751 (1st Cir. 1996)). "[W]hile the plaintiff's case and the comparison cases that [she] advances need not be

- 10 -

perfect replicas, they must closely resemble one another in respect to relevant facts and circumstances." Conward v. Cambridge Sch. Comm., 171 F.3d 12, 20 (1st Cir. 1999).

Here, Daumont avers that the district court applied the wrong legal standard, requiring her to show that the other employees' circumstances were "almost identical" to her own. She also avers that the court's determination that the proffered evidence lacked probative value usurped what should have been a question of fact for the jury. And, finally, she argues that because the Credit Union's policies state that its disciplinary procedures are to be applied uniformly to all employees, the court abused its discretion in not weighing the other employees' actions against her own to gauge their "comparative seriousness."

In our view, the district court did not abuse its discretion in excluding Daumont's proffered comparator evidence. To begin, Daumont's contention that the district court applied an overly stringent "almost identical" standard to her comparator evidence appears to derive from language used by the court at sidebar in a discussion of the use of comparator evidence. But as virtually everyone experienced in trial practice knows, judges' extemporaneous comments at sidebar are sometimes imprecise. Unless there is good reason to believe that such an imprecise statement affected a party's substantial rights, it should not be accorded decretory significance. See, e.g., Lenn v. Portland Sch.

Comm., 998 F.2d 1083, 1087-88 (1st Cir. 1993) (concluding that, given totality of circumstances, an "infelicitous choice of phrase" does not indicate that trial court deviated from "proper rule of decision"); cf. Loja-Tene v. Barr, 975 F.3d 58, 61 n.2 (1st Cir. 2020) (treating isolated misstatement of legal standard by Board of Immigration Appeals as "lapsus linguae" and refusing to accord it "dispositive weight"). In this instance, the critical datum is that the district court, in making its exclusionary ruling, faithfully recited and applied the correct legal standard. See Daumont I, 2019 WL 8808083, at *2; see also Perkins, 78 F.3d at 751 (explicating "similarly situated in material respects" standard). We therefore reject Daumont's claim of error.

This brings us to Daumont's contention that the determination of whether the employees to whom the comparator evidence related were similarly situated to her was a question of fact for the jury. It is true, of course, that juries serve as factfinders and, in that capacity, are entitled to weigh properly admitted evidence and to draw reasonable inferences therefrom. See, e.g., Blake v. Pellegrino, 329 F.3d 43, 47 (1st Cir. 2003). But the Federal Rules of Evidence entrust district courts with threshold issues as to the admissibility of evidence, including issues of relevance and the balancing of probative value and unfairly prejudicial effects. See Fed. R. Evid. 401, 403. Such issues must be determined on a case-by-case basis, in light of

- 12 -

both the particular factual context and the applicable law. See, e.g., Franchina v. City of Providence, 881 F.3d 32, 49 (1st Cir. 2018); United States v. Mehanna, 735 F.3d 32, 61 (1st Cir. 2013).

Our case law teaches that an employer's relative leniency toward one employee is only persuasive evidence of discrimination with respect to disciplinary action taken against a plaintiff-employee if the factfinder may reasonably infer from material similarities between the circumstances of the two that the discrepancy was likely correlated with the plaintiff's protected characteristic. See Dartmouth Rev. v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989) ("Much as in the lawyer's art of distinguishing cases, the 'relevant aspects' are those factual elements which determine whether reasoned analogy supports, or demands, a like result."). Material distinctions between the two sets of circumstances increase the danger that any such inference would amount to no more than mere speculation, and the district court bears the responsibility of separating the wheat from the chaff. See Morales Feliciano v. Rullán, 378 F.3d 42, 58 (1st Cir. 2004); Conward, 171 F.3d at 20-21.

Here, we discern no abuse of discretion in the district court's application of these tenets. Cf. Freeman v. Package Mach. Co., 865 F.2d 1331, 1340 (1st Cir. 1988) ("Only rarely — and in extraordinarily compelling circumstances — will we, from the vista of a cold appellate record, reverse a district court's on-the-spot

- 13 -

judgment concerning the relative weighing of probative value and unfair effect."). Although the Credit Union's motion in limine sought to exclude evidence regarding seven possible comparators, its objection at trial came in response to Daumont's attempt to introduce evidence regarding Dalitza Caez, a teller-supervisor. After banning the introduction of evidence as to Caez, the district court indicated that it would exclude evidence of the other proposed comparators on essentially the same grounds. See Daumont I, 2019 WL 8808083, at *1. Even so, the only other specific comparator evidence that Daumont later offered at trial concerned Carlos Vazquez, a branch manager.

In this venue, Daumont focuses exclusively on the exclusion of evidence relating to Caez and Vazquez. She has, therefore, waived any argument that the district court should have allowed her to adduce evidence as to comparators other than Caez and Vasquez. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

In excluding testimony regarding Caez — who was suspended for thirty days and demoted to teller after an incident in which she cashed a check for her mother — the court highlighted two primary distinctions between Caez's circumstances and Daumont's circumstances. First, Caez did not hold a "senior

- 14 -

position" comparable to Daumont's position as a branch manager. Daumont I, 2019 WL 8808083, at *2. Second, Caez did not commit misconduct as serious as signing another person's name to an official Credit Union document. See id. Moreover, Daumont was (by her own admission) seven times a repeat offender, while Caez was not shown to have engaged in more than one isolated act of misconduct. Last — but far from least — the rule of conduct that Daumont violated specified dismissal as the penalty for a first offense; in contrast, Caez violated a rule that called only for progressive discipline, starting with warnings.

These differences are consequential and, taken together, undercut Daumont's argument that comparator evidence concerning Caez's troubles should have been allowed into evidence. Distinctions as to an employee's position and as to the severity or frequency of her misconduct are proper factors in determining that a plaintiff and a proposed comparator are not similarly situated. See, e.g., Murray v. Kindred Nursing Ctrs. W. LLC, 789 F.3d 20, 27 (1st Cir. 2015); Woodward v. Emulex Corp., 714 F.3d 632, 636 (1st Cir. 2013).

In an effort to blunt the force of this reasoning, Daumont argues that the Credit Union's stated policy of applying its disciplinary rules uniformly to all employees renders their relative job classifications irrelevant. We agree with the premise of Daumont's argument: an employer's policies can be germane to

- 15 -

the analysis of comparator evidence.  See Murray, 789 F.3d at 28. We disagree, though, with the conclusion that Daumont would have us draw.  She has cited no authority for the much different proposition that the Credit Union's policy somehow compelled the court to disregard employees' roles and responsibilities in determining if those employees were similarly situated "in all relevant aspects."  Dartmouth Rev., 889 F.2d at 19.  In the circumstances of this case, we think it well within the district court's discretion to have considered the differences between Daumont's position and the comparators' positions.  See, e.g., Cardona Jiménez v. Bancomercio de P.R., 174 F.3d 36, 42 & n.4 (1st Cir. 1999).

Daumont's attempt to introduce comparator evidence concerning Vazquez fares no better.  At trial, the district court rejected this proffer, finding that Daumont did not establish that Vazquez had engaged in comparable misconduct.  On its face, Vasquez's misconduct appears to be a far cry from Daumont's:  he abandoned his post at one Credit Union branch and traveled to another branch, where he instructed a security guard, without rhyme or reason, to forbid the public from entering.[2]  Although the Credit Union's disciplinary letter informed Vasquez that he could

---

[2] This bizarre incident apparently occurred in connection with a larger dispute over the internal governance of the Credit Union. The details of that larger dispute are lost in the mists of time.

have been terminated (and would be if his behavior was repeated), he was only suspended for one week.

Excluding this evidence was within the district court's discretion. Although the Credit Union's rules of conduct delineate a scheme of progressive discipline, they prescribe immediate termination for particularly serious infractions. Whereas Daumont had violated the Credit Union's rules relating to the provision of false information on official documents (the stated penalty for which was dismissal, even for a first offense), Vasquez's transgressions (such as exhibiting a lack of courtesy and inducing misconduct on the part of other employees) were first offenses for which the rules specified either verbal or written warnings. In sum, the probative value of this evidence was slight and was outweighed by the likelihood that it would sow the seeds for conjecture. See Freeman, 865 F.2d at 1340.

We add a coda. While Daumont complains that, overall, the district court failed to weigh the "comparative seriousness" of other employees' misconduct against her own, we have held that "[n]o valid comparison can be drawn between two incidents for the purpose of proving disparate treatment if 'differentiating or mitigating circumstances' distinguish either the employee's conduct or the employer's response to it." Murray, 789 F.3d at 27 (quoting Conward, 171 F.3d at 21). So it is here: the district court supportably concluded that the Credit Union was interpreting

its own policy according to the tenor of that policy. See Daumont I, 2019 WL 8808083, at *2. The burden was on Daumont to establish the material equivalence of the comparators' misconduct, see Perkins, 78 F.3d at 751, and she failed to carry that burden.[3]

The bottom line is that "[a] district court is accorded a wide discretion in determining the admissibility of evidence." Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008) (quoting United States v. Abel, 469 U.S. 45, 54 (1984)). Here, the court acted within the compass of that discretion in concluding that "[a]pples and apples [were] not being compared." Daumont I, 2019 WL 8808083, at *2.

## C. Judgment as a Matter of Law.

We next examine Daumont's substantive assignments of error regarding the district court's entry of judgment as a matter of law. Even without the excluded comparator evidence, Daumont says, the district court should have allowed her claims to go to the jury. The challenged ruling engenders de novo review. See Downey, 633 F.3d at 9. Such review requires us to take the facts "and the inferences reasonably extractable therefrom in the light most hospitable to the nonmovant." Martínez-Serrano v. Quality

---

[3] We note — as did the district court, Daumont I, 2019 WL 8808083, at *1 & n.2 — that Daumont's opposition to the Credit Union's motion in limine was virtually bereft of factually specific arguments as to how "each of the proposed employees' circumstances" compared to her own, leaving evidentiary gaps that she did not fill when the Credit Union objected to her proffers at trial.

- 18 -

Health Servs. of P.R., Inc., 568 F.3d 278, 284 (1st Cir. 2009). In performing this tamisage, we cannot "pass upon the credibility of the witnesses, resolve evidentiary conflicts, or engage in a comparative weighing of the proof." Id. at 285. When all is said and done, judgment as a matter of law is appropriate only when the record dictates "a result as to which reasonable minds could not differ." Id.

On appeal, Daumont submits that the court below should have allowed three distinct causes of action to go to the jury. We examine those three causes of action in sequence.

1. **The ADEA Claim.** To prevail on a claim of wrongful discharge under the ADEA, an employee must carry the burden of proving "that [she] would not have been fired but for [her] age." Dávila v. Corporación de P.R. Para La Difusión Pública, 498 F.3d 9, 15 (1st Cir. 2007) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991)). In the absence of direct evidence of discriminatory animus — and none has been tendered here — an employer's discriminatory motive may be established through circumstantial evidence. See Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 138 (1st Cir. 2012). Taking that route requires resort to the McDonnell Douglas framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); see also Soto-Feliciano v. Villa Cofresí Hotels, Inc., 779 F.3d 19, 22-23 (1st Cir. 2015); Mesnick, 950 F.2d at 823.

At the first stage of the framework, the plaintiff must set forth her prima facie case. See Mesnick, 950 F.2d at 823. In this instance, that required Daumont to show "1) [she] was at least 40 years old at the time [she] was fired; 2) [she] was qualified for the position [she] had held; 3) [she] was fired, and 4) the employer subsequently filled the position, demonstrating a continuing need for the plaintiff's services." Vélez, 585 F.3d at 447. Even though this is a "modest" showing, id. (quoting Rathbun v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004)), it suffices to create a rebuttable presumption that the adverse employment action was motivated by age-based discrimination.

To rebut this presumption, the employer must then proffer a legitimate, nondiscriminatory rationale for having taken the adverse employment action. See Dávila, 498 F.3d at 16; Mesnick, 950 F.2d at 823. This stage of the analysis is not meant to shift the burden of proof but, rather, is intended merely to impose a burden of production. See Sanchez v. P.R. Oil Co., 37 F.3d 712, 720 (1st Cir. 1994).

At the third and final stage of the McDonnell Douglas framework, the employee must "prove by a preponderance of the evidence that the legitimate reason[] offered" in the employer's defense was "not its true reason[], but w[as] a pretext for discrimination." Vélez, 585 F.3d at 447-48 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)).

Because the presumption of discrimination has vanished at this stage, see Dávila, 498 F.3d at 16, the employee "must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination,'" Soto-Feliciano, 779 F.3d at 25 (quoting Mesnick, 950 F.2d at 824).

In granting the Credit Union's motion for judgment as a matter of law, the district court determined that "[a]bsolutely no evidence (neither direct or circumstantial) was presented that would enable a jury to conclude or reasonably infer that Defendants' actions were carried out because of [Daumont]'s age." Daumont II, 2019 WL 8809765, at *2. Elaborating on this conclusion, the court noted that Daumont had stipulated to signing Tirado's name to withdrawal slips on at least eight occasions; that those actions clearly violated the Credit Union's rules of conduct; that the rules of conduct prescribed termination of employment as the penalty for even a single infraction; and that Daumont had introduced no evidence from which a reasonable jury could conclude that the Credit Union's response to Daumont's misconduct was either unreasonable or at odds with its usual practice. See id. at *3.

Before us, Daumont complains that the district court failed to draw reasonable inferences from the evidence in her favor. The record, though, belies this plaint. It shows with

- 21 -

conspicuous clarity that the court correctly focused on the ultimate issue of age discrimination. See id. at *2-4. Daumont bore the burden of establishing that age discrimination was the but-for cause of her discharge. See Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009). She attempted to satisfy this burden by showing that the Credit Union's stated reason for cashiering her was pretextual, but a demonstration of pretext demands something more than existential doubt or an error of judgment on the employer's part. See Murray, 789 F.3d at 27; Mesnick, 950 F.2d at 825. And none of the evidence in this record was capable of grounding a reasonable inference that the Credit Union did not believe Daumont had violated its rules and terminated her for that reason.

To illustrate, Lourdes Rodriguez, the Credit Union's human resources director, testified that an employee signing another person's name on a withdrawal slip was unacceptable to the Credit Union and that such conduct violated the rule prohibiting the falsification of official documents. She also pointed out that the rules prescribed termination of employment as the penalty for even a first offense. Tellingly, Rodriguez's testimony in these particulars was both uncontradicted and unimpeached.

Daumont tries to parry this thrust by pointing to the Credit Union's treatment of Santos (the teller who actually effectuated the February 20 withdrawal). Santos testified that he

received only a written reprimand for his role in the incident. Even so, Daumont's claim of disparate treatment is more cry than wool: given Santos's subordinate relationship to Daumont, the fact that he did not sign Tirado's name on the slip, and the fact that Daumont had signed Tirado's name on several previous occasions, he and Daumont were not fair congeners. See, e.g., Cardona Jiménez, 174 F.3d at 42; Dartmouth Rev., 889 F.2d at 20. It follows that the evidence as to the manner in which the Credit Union disciplined Santos cannot support a reasonable inference of discrimination vis-à-vis Daumont.

By the same token, the record does not contain any basis for a claim in the nature of an estoppel. Contrary to Daumont's insinuations, there is simply no evidence to suggest that either Adorno or Hilerio authorized the earlier transactions in which Daumont signed Tirado's name. Indeed, nothing in the record supports an inference that Daumont's superiors were aware of the provenance of those transactions at any time before the Credit Union commenced its investigation into the February 20 transaction.

Finally, Daumont argues that the cause of her firing could not have been the February 20 transaction, since both Tirado and Santos testified that the Credit Union did not speak to them about the transaction before Hilerio made the decision to terminate Daumont's employment. But Daumont is aiming at the wrong target:

she identifies no new facts that either of these individuals could have contributed, which might have changed the decisional calculus. Importantly, the Credit Union never challenged Daumont's statement that Tirado had verbally authorized her to make the withdrawals; instead, it based her discharge on the fact — stipulated to by Daumont — that Daumont signed another person's (Tirado's) name to an official document.

The short of it is that Daumont — in order to survive summary judgment — needed to adduce "minimally sufficient evidence to permit a reasonable [jury] to conclude that [she] was fired because of [her] age." Dávila, 498 F.3d at 16. Although she attempted to do so by suggesting that the Credit Union's explanation for her discharge was pretextual, "[m]ere questions regarding the employer's business judgment are insufficient to raise a triable issue as to pretext." Acevedo-Parrilla, 696 F.3d at 140. As we have said, "[w]hether a termination decision was wise or done in haste is irrelevant, so long as the decision was not made with discriminatory animus." Rivera-Aponte v. Rest. Metropol No. 3, Inc., 338 F.3d 9, 11 (1st Cir. 2003). Without any evidence that the Credit Union did not believe in good faith that Daumont's act of signing Tirado's name to a withdrawal slip constituted falsification of an official document and thus warranted termination — and there is no such evidence in this record — "it is not our province to second-guess [its] decision."

- 24 -

Dávila, 498 F.3d at 17. Consequently, the district court did not err in granting the Credit Union's motion for judgment as a matter of law on Daumont's ADEA claim.

2. **The Law 100 Claim.** Daumont also pursued an age discrimination claim under Puerto Rico's employment discrimination statute, colloquially known as "Law 100." See P.R. Laws Ann. tit. 29, § 146. On this claim, too, the district court granted judgment as a matter of law in favor of the Credit Union. See Daumont II, 2019 WL 8809765, at *4.

We need not tarry. Although Law 100 brings to bear a burden-shifting framework different from that applicable to the ADEA, the two statutes are coextensive with respect to the ultimate question of discrimination. See Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 97 (1st Cir. 2018); Dávila, 498 F.3d at 18. Because we already have determined that Daumont did not adduce evidence from which a jury could reasonably infer that she was discharged because of her age, see supra Part II(C)(1), her appeal of the adverse judgment on her Law 100 claim necessarily fails.

3. **The Law 80 Claim.** This leaves Daumont's claim under Puerto Rico's wrongful discharge statute, colloquially known as "Law 80." See P.R. Laws Ann. tit. 29, § 185a. The district court disposed of this claim by granting judgment as a matter of law in the Credit Union's favor, see Daumont II, 2019 WL 8809765, at *5, and Daumont assigns error.

Law 80 provides for damages when an employee is discharged without "just cause," which is defined as "such reasons that affect the proper and regular operations of an establishment." P.R. Laws Ann. tit. 29, § 185b. Helpfully, the statute lists several specific examples of just cause, including "repeated violations of the reasonable rules and regulations established for the operation of the establishment."[4] Id.

Under Law 80's burden-shifting framework, an employee must allege not only that her employment was terminated but also that the termination was unjustified. See Pérez v. Horizon Lines, Inc., 804 F.3d 1, 9 (1st Cir. 2015). In response, the employer bears the burden of showing "that it had a reasonable basis to believe that an employee has engaged in one of those actions that the law identifies as establishing [just] cause." Id. To prevail at that juncture, the employee must rebut the showing of just cause with "probative evidence that [the employer] did not genuinely believe in or did not in fact terminate [the employee] for the reason given." Id. at 11.

---

[4] This exemplar is coupled with a proviso designed to ensure that the employee was on notice of the rules of conduct. See § 185b. Here, however, the record reflects no genuine issue regarding Daumont's awareness of the Credit Union's rules. Indeed, the Credit Union introduced into evidence a 2012 letter, which indicated that Daumont not only knew of the rules but that she had been reprimanded under them for her role in a transaction involving her daughter and put on notice of the potential consequences of future misconduct.

In the case at hand, the record makes manifest that the Credit Union had a sound basis to believe that Daumont had engaged in misconduct sufficient, on its face, to establish just cause. After all, Daumont was discharged because she admittedly (and repeatedly) engaged in conduct that directly violated the employer's rules. So, too, the record is pellucid that, under the rules, even a first offense for such a violation was a fireable offense. To cinch the matter, Daumont offered nothing in the way of probative evidence adequate to show that the Credit Union did not discharge her based on her misconduct. On these facts, we agree with the district court that a reasonable jury could only conclude that the Credit Union had established just cause for terminating Daumont's employment. See Daumont II, 2019 WL 8809765, at *5; see also Pérez, 804 F.3d at 10 (explaining that, under Law 80, a "perceived violation suffices to establish that [the employer] did not terminate [the employee] on a whim, but rather for a sensible business-related reason" (emphasis and alterations in original) (quoting Hoyos v. Telecorp Commc'ns, Inc., 488 F.3d 1, 10 (1st Cir. 2007))). We conclude, therefore, that the district court appropriately granted judgment as a matter of law in favor of the Credit Union on Daumont's Law 80 claim.

## III. CONCLUSION

We need go no further.  For the reasons elucidated above, the judgment of the district court is


**Affirmed.**