# United States Court of Appeals
## For the First Circuit

No. 20-1981

MELILUZ MARTÍNEZ; NOEL MARTÍNEZ; NOELIE MARTÍNEZ; JESHICA MARTÍNEZ,

Plaintiffs, Appellants,

v.

UNITED STATES,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Raúl M. Arias-Marxuach, U.S. District Judge]

Before

Barron, Chief Judge,
Thompson and Kayatta, Circuit Judges.

Michelle Annet Ramos-Jimenez for appellants.
Robert P. Coleman III, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

April 29, 2022

**BARRON**, **Chief Judge**.  This appeal is from a grant of summary judgment against Noel Martínez-Marrero's four children in their medical malpractice suit under the Federal Tort Claims Act ("FTCA").  The plaintiffs filed the suit against the United States in the United States District Court for the District of Puerto Rico in 2016 in connection with the allegedly negligent treatment their father received in the days leading up to his death at the United States Department of Veterans Affairs Medical Center.  We reverse the grant of summary judgment against the plaintiffs and remand for further proceedings.

## I.

We begin with a description of the undisputed facts and the procedural history.  We then describe some of the legal background to the analysis that follows.

## A.

The following facts are not in dispute in this appeal. On October 17, 2014, Noel Martínez-Marrero, a sixty-six-year-old male with a history of medical conditions including chronic liver disease, arrived at the Medical Center ("Hospital") operated by the U.S. Department of Veterans Affairs in San Juan, Puerto Rico. He was experiencing, among other things, abdominal pain, jaundice, a headache, and vomiting.

The Hospital diagnosed Martínez-Marrero with obstructive jaundice and admitted him. The Hospital treated Martínez-Marrero for a urine infection by placing him on the antibiotic, Zozyn.

While at the Hospital, Martínez-Marrero fell down on October 19, 2014, and fractured his femur after attempting to rise from his stretcher. Then, three days later, the Hospital switched Martínez-Marrero from Zozyn to a different antibiotic, Vancomycin, to treat his urine infection. The Hospital continued to administer this antibiotic to him for six days, until October 28, 2014.[1]

Martínez-Marrero died one day later, on October 29. His autopsy report detailed contusions, which a pathologist stated "imply bleeding."

**B.**

On August 3, 2016, the plaintiffs filed this lawsuit in the District of Puerto Rico pursuant to the FTCA against the United States, which oversees the Hospital. See 28 U.S.C. §§ 1346(b), 2671-2680. The complaint seeks monetary damages and attorneys' fees for the United States' "negligence and omissions" that the plaintiffs allege caused "mental and physical anguish[]" to Martínez-Marrero and "mental anguish[]" to themselves.

---

[1] Although the parties appear to list different dates for when Martínez-Marrero was placed on Vancomycin, we adopt for the purposes of this appeal the District Court's factual finding made in its summary judgment order that he began Vancomycin treatment on October 22, 2014.

- 3 -

"The law of Puerto Rico, where the alleged malpractice occurred, provides the standard of liability in this FTCA action." Torres-Lazarini v. United States, 523 F.3d 69, 72 (1st Cir. 2008) (citing 28 U.S.C. §§ 1346(b)(1), 2674). A plaintiff who seeks to "prove medical malpractice under Puerto Rico law" must establish three elements. Id. First, a plaintiff who brings a medical malpractice claim of negligence under Puerto Rico law must "establish" the "'duty owed (i.e., the minimum standard of professional knowledge and skill required in the relevant circumstances).'" Id. (quoting Cortés-Irizarry v. Corporación Insular De Seguros, 111 F.3d 184, 189 (1st Cir. 1997)). "Puerto Rico holds health care professionals to a national standard of care." Cortés-Irizarry, 111 F.3d at 190. Second, a plaintiff bringing such a claim must establish "an act or omission transgressing that duty." Id. at 189. With respect to this requirement, "Puerto Rico law presumes that physicians exercise reasonable care." Id. at 190. Third, a plaintiff bringing such a claim must establish "a sufficient causal nexus between the breach and the claimed harm." Id. at 189.

Under Puerto Rico law, a plaintiff "ordinarily must adduce expert testimony to limn the minimum acceptable standard and confirm the defendant doctor's failure to meet it." Id. at 190. The admissibility of expert testimony in federal court is governed by Federal Rule of Evidence 702, which provides:

- 4 -

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

The Supreme Court of the United States explained in Daubert v. Merrell Dow Pharmaceuticals, Inc. that Federal Rule of Evidence 702 assigns a "gatekeeping role for the judge" to determine that "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  509 U.S. 579, 597 (1993).  "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

"There is an important difference," however, "between what is unreliable support and what a trier of fact may conclude is insufficient support for an expert's conclusion."  Milward v. Acuity Specialty Prods. Grp., Inc. (Milward I), 639 F.3d 11, 22 (1st Cir. 2011).  That "the factual underpinning of an expert's

- 5 -

opinion is weak" is "a matter affecting the weight and credibility of the testimony -- a question to be resolved by the jury." Id. (quoting United States v. Vargas, 471 F.3d 255, 264 (1st Cir. 2006)). In addition, "Rule 702 has been interpreted liberally in favor of the admission of expert testimony." Levin v. Dalva Bros., Inc., 459 F.3d 68, 78 (1st Cir. 2006).

"The party seeking to introduce the evidence has the burden of establishing both its reliability and its relevance," and we review the District Court's decision to exclude the evidence "for abuse of discretion." Milward v. Rust-Oleum Corp. (Milward II), 820 F.3d 469, 472-73 (1st Cir. 2016) (citing Daubert, 509 U.S. at 593 n.10); see also Joiner, 522 U.S. at 146. The District Court's "[p]redicate factual findings are reviewed for clear error, while pure questions of law engender de novo review." Milward II, 820 F.3d at 472.

Federal Rule of Civil Procedure 26 requires that a party seeking to admit expert witness testimony in federal court submit "a written report" that "must contain" certain information, such as "a complete statement of all opinions the witness will express." Fed. R. Civ. P. 26(a)(2)(B)(i). The burden of showing that any noncompliance with Rule 26's requirements is justified or harmless is on the party seeking to admit the testimony. See Wilson v. Bradlees of New England, Inc., 250 F.3d 10, 21 (1st Cir. 2001).

During discovery, the plaintiffs identified to the United States a proposed expert witness, Dr. José Ortiz Feliciano. The United States deposed him on March 20, 2018. Then, on July 30, 2018, the plaintiffs formally and timely notified the District Court of their intent to introduce Dr. Ortiz Feliciano as their expert witness in a proposed pre-trial conference report that the parties jointly filed with the District Court. The plaintiffs stated in that joint report that Dr. Ortiz Feliciano would "testify about his qualifications as an expert and the deviations of care by VA Hospital in regards to the treatment provid[ed] to Noel Martinez Marrero, his cause of death and the medical standards applicable in this case."

In the same report, the United States notified the District Court of its intent to introduce an expert witness of its own, Dr. Anibelle Altieri Ramirez. The United States stated in the joint report that Dr. Altieri Ramirez would "testify that the VA Hospital medical management and interventions provided to Mr. Martínez did not deviate from the accepted medical practices." Prior to the close of discovery, the plaintiffs provided the United States an expert report produced by Dr. Ortiz Feliciano pursuant to Rule 26(a)(2)(B). The United States provided an expert report from Dr. Altieri Ramirez to the plaintiffs.

C.

On February 11, 2019, the United States moved pursuant to Federal Rule of Evidence 702 for the District Court to exclude Dr. Ortiz Feliciano's expert testimony. The motion pointed to deficiencies in the expert report from him that the plaintiffs had provided to the United States.

The United States' motion to exclude Dr. Ortiz Feliciano's testimony did not rely, however, solely on deficiencies with his proposed expert testimony that were manifest in his expert report. The motion also attached a copy of his curriculum vitae, various publications that he had provided to the United States, and excerpts from Dr. Ortiz Feliciano's deposition testimony, and pointed to their contents as well in arguing that his expert testimony had to be excluded under Federal Rule of Evidence 702.

The District Court issued an opinion and order that granted the United States' motion to exclude Dr. Ortiz Feliciano's testimony. See Martinez v. United States, No. 16-2340, 2019 WL 3022497, at *5 (D.P.R. July 10, 2019). The District Court in doing so described not only the requirements of Federal Rule of Evidence 702, id. at *1-2, but also the requirements of Federal Rule of Civil Procedure 26, id. at *2-3. The District Court quoted the latter rule's requirement that that expert reports contain "'a complete statement of all opinions the witness will express'" and

"'a statement of the compensation to be paid'" for the proposed expert's testimony. Id. (quoting Fed. R. Civ. P. 26(a)(2)(B)(i), (a)(2)(B)(vi)) The District Court explained that the rule "dictates that parties have a duty to supplement an expert's report by the time pretrial disclosure[s] are due." See id. at *3; Fed. R. Civ. P. 26(e)(2). In addition, the District Court noted that the "excerpt of Dr. Ortiz-Feliciano's deposition that was also included as an exhibit d[id] not discuss if the report is final." Id. at *4.

The District Court then concluded that the expert opinions set forth in the expert report -- which it determined to be the final expert report -- were not sufficiently "relevant" and "reliable" to meet the requirements of Federal Rule of Evidence 702. Id. at *4-5. The District Court also stated that the expert report was "not admissible because it d[id] not completely contain any of the information required by" Federal Rule of Civil Procedure 26(a)(2)(B) and "was not supplemented accordingly following Dr. Ortiz-Feliciano's deposition." Id. at *5. In the conclusion of the opinion, the District Court then ruled that Dr. Ortiz Feliciano's "report and proffered testimony do not fulfill the requirements" of Federal Rule of Evidence 702, Federal Rule of Civil Procedure 26(a)(2)(B), "and the applicable case law." Id.

The District Court thereafter set a trial date, and the plaintiffs filed a motion to reconsider the District Court's ruling excluding Dr. Ortiz Feliciano's expert testimony. The motion to reconsider addressed both Federal Rule of Evidence 702 and Federal Rule of Civil Procedure 26. The plaintiffs attached to that motion to reconsider certain records from the Hospital, Dr. Ortiz Feliciano's expert report, various publications in support of that report, and a transcript of his complete deposition.

That same day, the District Court issued an opinion that denied the plaintiffs' motion to reconsider. See Martinez v. United States, No. 16-2430, 2019 WL 3402950, at *2 (D.P.R. July 26, 2019). The District Court explained that despite the plaintiffs' contention that they had provided the necessary "medical literature," curriculum vitae, expert compensation disclosure, and previous case history, "the report itself does not contain this information." Id. at *1.

The District Court added that Rule 26 does not "generally" permit parties to "'cure deficient expert reports by supplementing them with later deposition testimony'" Id. (quoting Rodríguez v. Torres, No. 11-1602, 2015 WL 1138256, at *6 (D.P.R. Mar. 13, 2015), aff'd sub nom. Santos-Rodríguez v. Seastar Sols., 858 F.3d 695 (1st Cir. 2017)).

The District Court also explained that Dr. Ortiz Feliciano's "report fails to identify the national standard of

care," and that the "report does not mention any data or medical literature, beyond the hospital records, used to sustain his contention that there was a deviation from the standard of care. To comply with [Federal Rule of Civil Procedure] 26(a)(2)(B), the report necessarily needed to include this information, not simply provide copies of medical literature." Id. at *2. Finally, the District Court stated that "the main flaw" of Dr. Ortiz Feliciano's report "is not failing to mention the medical literature that he used. The fundamental issue is that it does not relate the content of the publications utilized to his belief that the national standard of care was not met." Id. Thus, the District Court concluded, "the report fail[ed] to comply with [Federal Rule of Evidence] 702." Id.

Later that same day, after the District Court had denied the plaintiffs' motion to reconsider, the United States filed a motion to dismiss the plaintiffs' complaint for failure to state a claim upon which relief could be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). The District Court initially issued an electronic order that deferred consideration of the United States' motion to dismiss until trial, noting in an order that, "Plaintiffs should be afforded the opportunity for further factual development and legal analysis." But, less than two months later, the District Court issued an order denying the motion to dismiss in which it noted, "[i]n light of Plaintiffs' own admission

- 11 -

that 'the exclusion of [their] expert, technically, constitutes the dismissal of the case,' Defendants must file a motion for summary judgment, not a motion to dismiss." (second alteration in original).

The District Court granted the United States twenty-one days to file such a motion and vacated the scheduled trial "[i]n the interest of conserving the parties' and judicial resources." The deadline to file a motion for summary judgment set by the Federal Rules of Civil Procedure had elapsed more than one year earlier. See Fed. R. Civ. P. 56(b).

The United States filed the motion for summary judgment. The District Court issued an opinion and order that granted summary judgment against the plaintiffs and in favor of the United States and dismissed the case with prejudice, "[d]ue to the absence of expert testimony." Martinez v. United States, No. 16-2430, 2020 WL 5039242, at *6 (D.P.R. Aug. 26, 2020). The plaintiffs filed this appeal from that judgment.

## II.

For reasons that we will explain, we conclude that the District Court erred in excluding the expert testimony of Dr. Ortiz Feliciano pursuant to Federal Rule of Evidence 702 and that the District Court erred in excluding that testimony pursuant to Federal Rule of Civil Procedure 26. As a result, we must vacate the grant of summary judgment against the plaintiffs, as the

- 12 -

District Court based that ruling on the plaintiffs' lack of supporting expert testimony in consequence of Dr. Ortiz Feliciano's testimony having been struck.[2]

We review the District Court's ruling to exclude Dr. Ortiz Feliciano's testimony based on Federal Rule of Evidence 702 and Federal Rule of Civil Procedure 26 for an abuse of discretion. See Lawes v. CSA Architects & Eng'rs LLP, 963 F.3d 72, 90 (1st Cir. 2020). Pursuant to that standard, "embedded findings of fact are reviewed for clear error, questions of law are reviewed de novo, and judgment calls are subjected to classic abuse-of-discretion review." Id. (quoting Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC, 752 F.3d 82, 91 (1st Cir. 2014)). We "will reverse a trial court's decision if we determine the judge committed 'a material error of law' or 'a meaningful error in judgment.'" Id. (quoting United States v. Jordan, 813 F.3d 442, 445 (1st Cir. 2016)). This "occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no

---

[2] The plaintiffs' appeal from the District Court's entry of summary judgment against them permits us to consider separately their challenge to the District Court's predicate order striking Dr. Ortiz Feliciano's expert testimony. See Martínez-Serrano v. Quality Health Servs. of P.R., Inc., 568 F.3d 278, 283 (1st Cir. 2009) (explaining that when an appellant "designate[s] the final judgment in a case as the appeal's object . . . such a notice of appeal is deemed to encompass not only the final judgment but also all interlocutory orders that merge into it").

improper factors are assessed, but the court makes a serious mistake in weighing them."  Id. (quoting Fashion House, Inc. v. K mart Corp., 892 F.2d 1076, 1081 (1st Cir. 1989)).

**A.**

The District Court concluded that Dr. Ortiz Feliciano's testimony must be struck under Federal Rule of Evidence 702 because the plaintiffs had failed to show that it was "relevant" or "reliable."  Martinez, 2019 WL 3022497, at *4.  The District Court explained that "to be considered relevant" expert testimony "must help the trier of fact to understand the evidence or determine a fact in issue."  Id.; see Fed. R. Evid. 702(a) (permitting expert testimony when "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue").  The District Court explained that to be considered "reliable" expert testimony must be "based on sufficient data and/or facts and [be] the product of trustworthy principles."  Id.; see Fed. R. Evid. 702(b)-(d) (permitting expert testimony when it is "based on sufficient facts or data," the "product of reliable principles and methods," and the expert has "reliably applied the principles and methods to the facts of the case").  We address each part of the District Court's Rule 702 ruling separately.

**1.**

The District Court ruled that the proffered testimony of Dr. Ortiz Feliciano would not "help the trier of fact," Fed. R. Evid. 702(a) -- and so, in the District Court's vernacular, was not "relevant" -- because the plaintiffs failed to show that the testimony would "provide any helpful information that could not be obtained from revi[ewing] Mr. Martínez-Marrero's hospital record and autopsy report."  Martinez, 2019 WL 3022497, at *5 (emphasis removed); see Fed. R. Evid. 702(a) ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]").  The District Court concluded in support of that ruling that Dr. Ortiz Feliciano's expert report did not "explain, or even define, the medical conditions and medications described in said records in a way that would facilitate understanding them."  Martinez, 2019 WL 3022497, at *5. The District Court further concluded in support of that ruling that the report "glaringly omit[ted] mentioning the applicable standard of care that Defendant[s] should have met prior to concluding that a departure occurred."  Id.

We start with the District Court's latter conclusion, which, as we will explain, is not supported by the record.  In

proffering his expert opinion, the record shows, Dr. Ortiz Feliciano identified two separate national standards of care that Martínez-Marrero's treatment implicated. Moreover, the record shows that Dr. Ortiz Feliciano identified a deviation from each of those standards of care. We consider what the record shows as to each standard of care (and the asserted deviation from it) in turn.

The first standard of care that Dr. Ortiz Feliciano identified is, as the plaintiffs contend, set forth in his expert report. He described that standard of care as requiring a hospital to monitor and correct blood platelet levels as they decrease.

The expert report stated in that regard that "[t]he decline in [Martínez-Marrero's] platelet levels was not monitored or corrected during the last 3 days prior to death" and that it was "accepted medical practice" to undertake such monitoring. Id. at *4. Indeed, the report also noted that Martínez-Marrero was receiving an antibiotic, Vancomycin, for his urinary tract infection, and that "[s]evere bleeding can occur in Vancomycin immune-induced [t]hrombocytopenia," and the report then went on to note that, for this reason, too, the "patient must be monitored for decrease in platelet levels."[3]

---

[3] In the excerpt from his deposition testimony that the United States attached to its motion to exclude Dr. Ortiz Feliciano's testimony, Dr. Ortiz Feliciano agreed that "thrombocytopenia is a decrease of platelets[.]"

- 16 -

We also agree with the plaintiffs that Dr. Ortiz Feliciano identified in his expert report a departure from this standard of care. The report explained that Martínez-Marrero's thrombocytopenia "had reached critical levels on 10/26/2014" -- a date after which the report then went on to state "there was no monitoring." The report further stated that the "progressive decrease in the platelet count during [Martínez-Marrero's] hospitalization . . . was not evaluated or managed." To that same point, the report included a chart that listed the "progressive decrease" in Martínez-Marrero's platelet levels that Dr. Ortiz Feliciano identified, which showed that Martínez-Marrero's blood platelet counts steadily decreased during his stay at the Hospital, from 80 on October 20th to 54 on October 26th. The report then went on to state, "[t]his [failure to monitor] is a departure from accepted medical practice" (emphasis added).

The second standard of care that Dr. Ortiz Feliciano identified is, as the plaintiffs assert, the requirement to monitor levels of the antibiotic Vancomycin in a patient's body. True, Dr. Ortiz Feliciano's report did not clearly describe this standard of care in the way that his report identified the standard of care regarding the requirement to monitor blood platelet levels. But, Dr. Ortiz Feliciano did identify this standard of care in a portion of his deposition testimony that the United States itself attached to its motion to exclude his testimony under Federal Rule of

Evidence 702 and that the District Court acknowledged that it reviewed in making its ruling under that rule.

Specifically, Dr. Ortiz Feliciano's report explained that Martínez-Marrero had been placed on "antibiotic therapy for urine infection" with "Vancomycin," which "can produce severe bleeding d[ue] to thrombocytopenia." Then, in the excerpt from Dr. Ortiz Feliciano's deposition testimony mentioned above, the doctor referred to the monitoring of Vancomycin levels as being "the accepted clinical practice" (emphasis added).

We also agree with the plaintiffs that Dr. Ortiz Feliciano set forth his opinion that there had been a deviation from this Vancomycin-monitoring-based standard of care. Dr. Ortiz Feliciano did so by stating in that same excerpt from his deposition mentioned above that "Vancomycin has to be given at a therapeutic level"; that on October 24th "the lab from VA identifie[d] this level was too high"; that the lab "recommended that the levels be repeated for monitoring"; that "[y]ou have to repeat the level to know what is going on. Is it still high, or is it low"; that "[t]hey did not monitor it on the 24th. They did not even change the dosage"; and that no such monitoring or changes in dosage occurred "despite a recommendation from the lab and the accepted clinical practice that you have to monitor those levels" (emphasis added).

It is true that "Puerto Rico holds health care professionals to a national standard of care." Cortés-Irizarry, 111 F.3d at 190. But, to the extent that the District Court based its Rule 702 "relevance" ruling on Dr. Ortiz Feliciano's failure to have identified either of the standards of care just described as being a "national" standard of care, see Martinez, 2019 WL 3022497, at *5; Martinez, 2019 WL 3402950, at *1-2, the District Court erred.

At the summary judgment stage, "affiants and witnesses need not be precise to the point of pedantry" with respect to this requirement. Cortés-Irizarry, 111 F.3d at 190. Thus, an expert's "references to the 'average gynecologist' and to the 'prevailing medical standard'" have been found, when "read in context," to constitute a "satisfactory statement" of "the national standard of care." Id.

Given that precedent, Dr. Ortiz Feliciano sufficiently made clear that he stated each of the standards of care from which he identified a deviation as a "national" one. His expert report stated that the failure to monitor platelet levels -- the only opinion of Dr. Ortiz Feliciano's that the District Court addressed -- was "a departure from accepted medical practice" (emphasis added). Furthermore, Dr. Ortiz Feliciano clarified in the excerpt from his deposition that the United States attached to its motion to exclude that his opinion concerning what data was relevant to

the monitoring of the platelets applied not just to his analysis but "[t]o any analysis" (emphasis added). And, although the District Court did not address Dr. Ortiz Feliciano's second opinion concerning the failure to monitor levels of Vancomycin, we note that this opinion, too, identified a national standard of care, as Dr. Ortiz Feliciano referred in the same excerpt from his deposition that the United States attached to its motion to exclude to the need to monitor and adjust Vancomycin levels as "a clinical decision" governed by the "accepted clinical practice" (emphasis added).

There remains to address the District Court's independent decision to exclude Dr. Ortiz Feliciano's testimony for lack of "relevance" because his expert report did "not explain, or even define, the medical conditions and medications described in said records in a way that would facilitate understanding them." Martinez, 2019 WL 3022497, at *5. But, here, too, we conclude that the record does not support the District Court's conclusion.

The expert report highlighted the components of the medical record relevant to Dr. Ortiz Feliciano's opinions in a manner that assists "understand[ing]" those records. Fed. R. Evid. 702(a). The report noted, for example, the dates on which "there was no monitoring" of Martínez-Marrero's platelet levels and included a chart that listed his platelet level on each day. The report also explained what Dr. Ortiz Feliciano believed the

Hospital should have done ("monitor[] for decrease in platelet levels" and "obtain[]" "further levels" of Vancomycin), and why (to avoid "[s]evere bleeding").

Moreover, Federal Rule of Evidence 702(a) refers broadly to whether an expert's "specialized knowledge will help the trier of facts to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). See, e.g., Fed. R. Evid. 702(b), (c) (referring to "the testimony"); Lawes, 963 F.3d at 100-01 (considering deposition testimony in evaluating preclusion of expert pursuant to Federal Rule of Evidence 702); Milward II, 820 F.3d at 474 (considering testimony elicited from expert at Daubert hearing); see also Cortés-Irizarry, 111 F.3d at 188 ("Voir dire is an extremely helpful device in evaluating proffered expert testimony . . . ."). The showing required under Federal Rule of Evidence 702 is thus not keyed solely to what is set forth in the expert report provided pursuant to Federal Rule of Civil Procedure 26.

That is significant here. As we have explained, when Dr. Ortiz Feliciano's report is considered along with the excerpt from his deposition testimony that the United States attached to its motion to exclude, it is evident that Dr. Ortiz Feliciano explained what the Hospital's medical records showed in a manner sufficient to make his testimony relevant to understanding whether Martínez-Marrero received negligent treatment.

The United States does advance one additional ground for affirming the ruling excluding Dr. Ortiz Feliciano's testimony pursuant to Federal Rule of Evidence 702 that appears to relate to what the District Court deemed to be the "relevance" issue. The United States contends that none of Dr. Ortiz Feliciano's opinions address whether there is "a causal relation between the act or the omission of the physician and the injury by the patient." Santiago v. Hosp. Cayetano Coll y Toste, 260 F. Supp. 2d 373, 381 (D.P.R. 2003) (quoting Sierra Perez v. United States, 779 F. Supp. 637, 643 (D.P.R. 1991)) (emphasis added). The United States then argues that "[w]ithout an opinion as to how Martínez[-Marrero]'s treatment would have been different if these levels [of platelets and Vancomycin] were monitored, there is no reason to believe that the lack of monitoring played any role in Martínez[-Marrero]'s death."

The District Court did not itself purport to rely on this ground, however, in either its order excluding Dr. Ortiz Feliciano's expert testimony or its subsequent order denying the plaintiffs' motion to reconsider. See Martinez, 2019 WL 3022497, at *4-5; Martinez, 2019 WL 3402950, at *1-2. The United States thus appears to be contending that, even though the District Court did not identify any failure to address causation on Dr. Ortiz Feliciano's part, we must affirm the District Court's ruling to

- 22 -

exclude his testimony pursuant to Federal Rule of Evidence 702 on that ground.  We decline to do so.

The United States is right that Dr. Ortiz Feliciano's report did not itself address this causation issue.  But, as we have explained, for purposes of excluding expert testimony under Federal Rule of Evidence 702, the report is not necessarily dispositive.  Indeed, the United States itself recognizes that is so.  In pressing this ground for affirming the District Court's ruling under Federal Rule of Evidence 702, the United States goes on to argue that Dr. Ortiz Feliciano's deposition testimony failed to make up for the report's deficiency.

Moreover, in then addressing the deposition testimony, the United States identifies only one deficiency with respect to how Dr. Ortiz Feliciano addressed causation.  The United States contends that even though Dr. Ortiz Feliciano opined in that testimony that with proper monitoring of blood platelet levels the Hospital could have intervened to provide Martínez-Marrero "a transfusion of platelets or steroids," Dr. Ortiz Feliciano still failed to address causation because he "agreed" with the United States' expert that such a "transfusion would have provided only a temporary benefit" to Martínez-Marrero.

But, the United States does not identify where in either the report or the deposition (including in the portions of the deposition to which it cites) Dr. Ortiz Feliciano conceded that a

transfusion would provide only a temporary benefit, such that a transfusion would not have extended Martínez-Marrero's life. And, our own review reveals that, to the contrary, Dr. Ortiz Feliciano explained in the excerpt from his deposition that was attached to the motion to exclude his testimony that even though blood transfusions or steroids could not have cured Martínez-Marrero "of the chronic liver disease," they could have "extend[ed] his life." Dr. Ortiz Feliciano also explained in that portion of his deposition testimony that Martínez-Marrero died from bleeding not "[b]ecause he had chronic liver disease" but "because he had a low platelet count," even though the low platelet count may in turn have been caused by his chronic liver disease. And, Dr. Ortiz Feliciano explained in that portion of his deposition testimony not only that "not all patients with chronic liver disease die from bleeding," but also that Martínez-Marrero "didn't die the other two times" because his platelet levels "didn't go down critically" as Dr. Ortiz Feliciano concluded they did here. Thus, the sole causation-based ground that the United States identifies for excluding Dr. Ortiz Feliciano's testimony pursuant to Federal Rule 702 does not hold up.[4]

---

[4] The United States does not assert that Dr. Ortiz Feliciano's deposition testimony failed to address causation with respect to the deviation in the claimed national standard of care that he identified with respect to the monitoring of Vancomycin

**2.**

The District Court separately ruled that Dr. Ortiz Feliciano's testimony was not admissible pursuant to Federal Rule of Evidence 702 because the plaintiffs did not make the requisite showing that the opinions that he proffered were, as the District Court put it, "reliable" or "based on sufficient data and/or facts" and "the product of trustworthy principles." Martinez, 2019 WL 3022497, at *4; see Fed. R. Evid. 702(b)-(d) (explaining that expert testimony must be "based on sufficient facts or data," must be "the product of reliable principles and methods," and requires that the expert "has reliably applied the principles and methods to the facts of the case"). The District Court based this conclusion solely on the shortcomings that it identified in Dr. Ortiz Feliciano's report, without addressing the content of his deposition testimony, including the excerpt from that testimony that the United States itself had attached to its motion to exclude his testimony. See Martinez, 2019 WL 3022497, at *5.

---

levels. That is understandable. He explained in that excerpt from his deposition testimony that it was his opinion that the Hospital could have "change[d] the amount of the dose" or "given it in a different frequency," and that Martínez-Marrero died not "[b]ecause he had chronic liver disease," but "because he had a low platelet count" -- to which "Vancomycin contributed." Because the District Court does not appear to have addressed Dr. Ortiz Feliciano's opinion concerning monitoring of Vancomycin levels, we need not go further.

The District Court determined in so ruling that the report failed "to show that the testimony is supported by an accepted methodology based on substantial scientific or specialized information" and that it "lack[ed] key facts that are fundamental for its conclusion." Id. The only specific failing that the District Court identified in support of that conclusion, however, was that Dr. Ortiz Feliciano "explicitly state[d]" in the report "that he can 'only postulate' that Mr. Martinez-Marrero's platelet count continued to decrease during the three days prior to his death." Id. Then, seemingly on that basis alone, the District Court determined that it "must conclude that there is 'simply too great an analytical gap between the data and the opinion proffered'" Id. (quoting Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)). We cannot agree.

The plaintiffs rightly argued in their brief in opposition to the motion to exclude, just as they point out to us in their briefing on appeal, that Dr. Ortiz Feliciano relied for the "postulate[d]" decrease in platelet levels not on an unexplained or ungrounded analysis but on a review of the relevant medical records. In particular, the record shows that the "progressive decrease" that his expert report identified relied on the fact that the Hospital's own medical records showed that decrease. The record further shows that Dr. Ortiz Feliciano stated in his report that a continued decrease in those levels "would

lead to a bleeding coagulopathy <u>as evidenced by the autopsy findings</u>" (emphasis added). In other words, Dr. Ortiz Feliciano stated in his report both that the medical records showed a progressive decrease in platelets in the period leading up to the three days prior to Martínez-Marrero's death and that the autopsy records showed the kind of "bleeding coagulopathy" that a continued decrease in platelets would "lead to."

In the excerpt from Dr. Ortiz Feliciano's deposition that the United States attached to its motion to exclude his testimony, moreover, the doctor stated that "[i]t says in the literature" that Martínez-Marrero's bruising about which the United States was questioning him was "a warning sign that you are bleeding into the soft tissue." The doctor then went on to state that such bleeding was "a consequence of the platelet decrease" and "that is why you have to treat it." In addition, in conjunction with Dr. Ortiz Feliciano's reliance on the "progressive decrease" in platelets that he observed in that record, he made clear in the excerpt from the deposition attached to the United States' motion to exclude that his opinion also relied on his own clinical experience, including the fact that he had "been treating chronic liver disease all [his] life," that he had experience operating on at least thirty-four patients that "all had chronic liver disease,"

and that the "focus" of what he "studied and treated" included "[t]he treatment of bleeding."[5]

In sum, the medical records, combined with Dr. Ortiz Feliciano's own clinical experience, provided a sufficiently reliable basis for his opinions, including the one that the District Court identified as having been merely "postulate[d]." We also agree with the plaintiffs that the criticisms that the United States made in its motion to exclude the expert testimony -- and that the United States repeats to us on appeal -- about the strength of the support that the sources on which Dr. Ortiz Feliciano relied provide for his opinions speak to the probative weight of the testimony, not to its admissibility. See Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); Crowe v. Marchand, 506 F.3d 13, 18 (1st Cir. 2007) ("Objections of this type, which question the factual underpinnings of an expert's investigation, often go to the weight of the proffered testimony, not to its admissibility."); Payton v. Abbott Labs, 780 F.2d 147, 156 (1st Cir. 1985) (explaining that

---

[5] That same excerpt from Dr. Ortiz Feliciano's deposition testimony that the United States attached to its motion emphasized his experience; Dr. Ortiz Feliciano explained, for example, that Martínez-Marrero had "a bleeding problem. Who works more with bleeding problems than a surgeon?"

"the fact that [a] defendant [i]s able to undercut some of the research basis for the doctors' opinions" affects "the weight and credibility," but not "the admissibility[,] of those opinions"). Thus, we cannot sustain the District Court's ruling to exclude the testimony pursuant to Federal Rule of Evidence 702 insofar as that ruling is based on concerns about the reliability of the opinions expressed in that testimony. See Crowe, 506 F.3d at 16-17 (finding that physician's reliance on medical records met the "sufficient facts or data" requirement for his conclusion that an alternative surgical timeline "would have worsened the plaintiff's condition, not ameliorated it"); see also Mueller v. Auker, 700 F.3d 1180, 1191 (9th Cir. 2012)("Clinical instinct as a diagnostic and treatment tool is not new.").[6]

---

[6] Dr. Ortiz Feliciano's opinion in his report that Martínez-Marrero's platelet levels continued to decrease also finds support in the publications attached to the United States' motion to exclude Dr. Ortiz Feliciano's testimony and on which, Dr. Ortiz Feliciano testified in the excerpt from the deposition that was also attached to that motion, he had relied in forming his opinions. Those publications explained that critically low platelet counts can lead to the kind of bleeding that Dr. Ortiz Feliciano identified in his deposition testimony that Martínez-Marrero experienced. One of those publications stated that for patients with "platelet counts between 40,000 and 100,000 per mm$^3$, bleeding may occur after injury or operation," and another observed that a platelet count lower than 50,000 per mm$^3$ constitutes "severe thrombocytopenia." And, Dr. Ortiz Feliciano explained in the excerpt from the deposition that the United States attached to its motion to exclude his testimony that the Hospital's records showed that Martínez-Marrero "bled extensively into the soft tissue" after "he fell on the 19th," and he explained that this bleeding was "cause[d]" by "[l]ow platelets."

**B.**

We next consider the District Court's apparent decision to exclude Dr. Ortiz Feliciano's expert testimony based on Federal Rule of Civil Procedure 26. We note that the United States appears to contend that the District Court did not rely on Rule 26 in excluding Dr. Ortiz Feliciano's testimony. But, the plaintiffs are of the opposite view. Moreover, we note that the District Court did point out that the plaintiffs failed to supplement their expert report "following Dr. Ortiz-Feliciano's deposition" pursuant to Rule 26(e)(2); that the District Court ruled that Dr. Ortiz Feliciano's report was "not admissible because it does not completely contain any of the information required by" Rule 26(a)(2)(B); and that the District Court, in the conclusion of that order, stated that Dr. Ortiz Feliciano's "report and proffered testimony do not fulfill the requirements of" that rule. Martinez, 2019 WL 3022497, at *5. Thus, we proceed on the understanding that the District Court excluded Dr. Ortiz Feliciano's testimony not only based on Federal Rule of Evidence 702 but also based on a determination that the plaintiffs failed to meet the requirements of Federal Rule of Civil Procedure 26.

The plaintiffs contend that the District Court abused its discretion in imposing the "harsh sanction" of excluding Dr. Ortiz Feliciano's expert testimony pursuant to Rule 26(a)(2)(B),

because that sanction "forced the dismissal of the case." In other words, they argue that even if the District Court correctly concluded that the plaintiffs failed to meet the requirements of Rule 26 by failing to supplement their expert report formally with the information that was missing from the report itself, the District Court still erred in excluding Dr. Ortiz Feliciano's testimony for that reason. Thus, the question remains for us whether the District Court's decision to exclude Dr. Ortiz Feliciano's testimony for transgressing Rule 26 "was so wide of the mark as to constitute an abuse of discretion." Lawes, 963 F.3d at 92 (quoting Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003)). We conclude that it was.

In Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72 (1st Cir. 2009), we explained that where "all parties acknowledged that the sanction" of a party for its failure to meet Rule 26(a)(2)(B)'s disclosure requirements "carried the force of a dismissal, the justification for it must be comparatively more robust," id. at 79; see also Lawes, 963 F.3d at 91 (similar). That requirement applies here. See Rolon-Alvarado, 1 F.3d at 79 (describing "the general rule requiring expert testimony in medical malpractice cases" brought under Puerto Rico law and the "narrowly configured exception" to it).

As we explained in Esposito, we review the District Court's decision to impose that severe sanction "with reference to a host of factors" that include:

> (1) the history of the litigation; (2) the sanctioned party's need for the precluded evidence; (3) the sanctioned party's justification (or lack of one) for its late disclosure; (4) the opponent-party's ability to overcome the late disclosure's adverse effects -- e.g., the surprise and prejudice associated with the late disclosure; and (5) the late disclosure's impact on the district court's docket.

590 F.3d at 78; see also Lawes, 963 F.3d at 92 (similar).

In assessing whether, given the facts described above, an abuse of discretion occurred here, our "focus" -- due to the severity of the sanction -- is "mainly upon" the fourth factor -- the "surprise and prejudice" to the opposing party. Lawes, 963 F.3d at 92 (quoting Thibeault v. Square D Co., 960 F.2d 239, 246-47 (1st Cir. 1992)). In fact, "we have never affirmed an expert's preclusion when we were not persuaded by the proffered evidence of surprise or prejudice in the record." Id. at 96.

In consequence, it is of concern to us that the United States made no argument to the District Court -- and that it has made none to us on appeal -- that the plaintiffs' failure to amend the report in light of the deposition, or to attach to it the other information required by Rule 26(a)(2)(B), surprised or prejudiced the United States. In fact, the United States never moved for the

- 32 -

expert testimony at issue to be excluded pursuant to Rule 26.  It moved for the exclusion of that testimony solely pursuant to Federal Rule of Evidence 702, and, in doing so, cited in support of that argument to the excerpt from Dr. Ortiz Feliciano's deposition that was attached to that motion.[7]

Thus, while it is true that the plaintiffs here did not in their brief in opposition to the United States' motion to exclude "quote[]" from or include an "attach[ment]" to Dr. Ortiz Feliciano's deposition, Lawes, 963 F.3d at 93, it is also true that the plaintiffs referred in that brief to the opinions "as stated by" their expert.  And while the District Court evaluated for admissibility purposes only the contents of the two-page report in its order, see Martinez, 2019 WL 3022497, at *4-5, "there is no support in the rules or our case law for disregarding deposition testimony in considering whether (and to what extent) sanctions are appropriate given the discovery violations at issue." Lawes, 963 F.3d at 94.  Thus, insofar as the District Court relied on the plaintiffs' failure to comply with Rule 26 to exclude Dr. Ortiz Feliciano's testimony, it is concerning that "the district court does not explain how, in view of the deposition excerpts available to it, [the United States] was surprised by" the testimony that

---

[7] We note further that at oral argument in this case, the United States stated that it had not been prejudiced by the plaintiffs' failure to supplement or amend the report with this information.

- 33 -

Dr. Ortiz Feliciano provided in that deposition in support of the opinions he set forth in in his expert report.  Id. at 94.

Similarly, the United States never argued that it was prejudiced by the plaintiffs' failure to attach to the expert report the medical literature on which Dr. Ortiz Feliciano relied for his expert opinions.  See Fed. R. Civ. P. 26(a)(2)(B)(i)-(iii) (requiring that the report contain "a complete statement of all opinions" and the "basis and reasons for them," "the facts or data considered by" the expert and "any exhibits that will be used to summarize or support" the expert's opinions).  Indeed, in the motion to exclude the expert testimony, the United States contended that "Dr. Ortiz [Feliciano] provided literature that does not support his own opinion," and attached copies of that literature to that motion.  And the other data on which Dr. Ortiz Feliciano relied, as we have explained, came from the Hospital's own medical records.  Nor did the United States represent in its motion to exclude Dr. Ortiz Feliciano's testimony that it had been prejudiced by any failure to include in the report the remaining information required by Rule 26(a)(2)(B) -- "the witness's qualifications," Fed. R. Civ. P. 26(a)(2)(B)(iv), the list of recent cases in which the witness testified as an expert, id. 26(a)(2)(B)(v), and "a statement of the compensation to be paid," id. 26(a)(2)(B)(vi).  Nor, finally, has the United States developed any such argument in this appeal.

We acknowledge that the District Court, in its opinion granting the United States' motion to exclude Dr. Ortiz Feliciano's testimony, cited to Santiago-Díaz v. Laboratorio Clínico Y De Referencia Del Este to explain that Rule 26(a)(2)(B) "call[s] for the parties to make explicit and detailed expert disclosures." 456 F.3d 272, 276 (1st Cir. 2006). See Martinez, 2019 WL 3022497, at *3. But, in this case, the plaintiffs' "pretrial disclosures and relevant excerpts from [Dr. Ortiz Feliciano's] deposition[]" were sufficiently detailed to give the United States "more than sufficient notice" of the basis for and substance of Dr. Ortiz Feliciano's opinions concerning the Hospital's deviations from the standard of care. Lawes, 963 F.3d at 93. The plaintiff whose expert's testimony this Court affirmed the exclusion of in Santiago-Díaz, by contrast, had waited until more than six months after the applicable deadline to identify an expert witness whom she had given the defendants in that case no opportunity to depose. 456 F.3d at 274. Moreover, that plaintiff had provided to the defendants only the expert's curriculum vitae and "a one-page statement" that "did not by any stretch of the most fertile imagination meet the criteria set by" Rule 26(a)(2)(B). Id.

Thus, the exclusion of Dr. Ortiz Feliciano's expert testimony based on the plaintiffs' failure to comply with Rule 26 is not proper here. See Lawes, 963 F.3d at 94-95 ("District courts

should 'consider <u>all</u> the circumstances surrounding [an] alleged [expert disclosure] violation' in considering what sanction (if any) is warranted in a given case. . . . The district court's disregard for deposition testimony in this case amounts to a meaningful error in judgment . . . ." (alterations in original) (quoting <u>Thibeault</u>, 960 F.2d at 246)).

### III.

We **<u>reverse</u>** the order excluding the expert testimony, **<u>vacate</u>** the entry of summary judgment, and **<u>remand</u>** for further proceedings consistent with this opinion.  The parties shall bear their own costs.